UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIK BENJAMIN CHERDAK,

Plaintiff,

v. Case No.: 2:22-cv-634-SPC-NPM

VINCENT PAUL COTTONE and
LINDA MARIE COTTONE,

Defendants.

_________________________________/

**OPINION AND ORDER**[1]

Before the Court is Defendants' Renewed Motion to Dismiss (Doc. 13), along with *pro se* Plaintiff Erik Cherdak's Response (Doc. 16) and Plaintiff's Request for Oral Argument (Doc. 17). For the below reasons, the Court grants Defendants' Motion but denies Plaintiff's Request.

**BACKGROUND**

This is a defamation case. It centers around two nearly identical affidavits[2] that Defendants signed (but may not have filed in) an ongoing state

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

[2] The differences in the affidavits are not substantive. They are things such as "my wife and I" changed to "my husband and I" to reflect the different affiants—husband and wife Vincent and Linda Cottone. The phrases which Cherdak alleges are defamatory are identical.

court action in the Family Court of the Ninth Judicial Circuit in Charleston, South Carolina.[3] The exact nature of the South Carolina action is disputed, although it is likely a divorce or divorce-related family matter.[4]

In the affidavits, Defendants say that Cherdak "has abused my daughter and grandsons. All of this now is, in my belief, merely an attempt to continue to hurt my daughter and grandchildren." (Doc. 1-2). Cherdak alleges that Defendants "published" the affidavits to "notary publics in Florida (Mr. Danillo [sic] Morales); Mr. Jonathan E.B. Lewis of Beaufort, South Carolina; Mrs. Lauren Ann Cottone; and Mr. Christian St. Amour (an independent contractor to Plaintiff in the legal services field)." (Doc. 1 at n.2). Based on the Complaint and attached exhibits, Morales notarized both affidavits, Lewis represents Cherdak's wife in the South Carolina litigation, Lauren Cottone is Cherdak's wife and Defendants' daughter, and St. Amour is an independent contractor working for Cherdak.[5] Cherdak thus sues Defendants for defamation per se,

---

[3] The affidavits are styled with the following case caption: *Lauren Ann Cottone v. Erik Benjamin Cherdak*, 2022-DR10-0519.

[4] Defendants allege the South Carolina action is a divorce proceeding (Doc. 13 at 5). Cherdak, however, refuses to characterize it as a divorce. He refers to the South Carolina action as "divorce-type litigation" concerning "[Lauren Cottone's] admitted adultery being the cause of the couple's marital breakdown." (Doc. 1 at n.6, n.9). Cherdak also mentions a "motion for sanctions to be heard in the Family Court in Charleston, South Carolina." (Doc. 1 at 8).

[5] Doc. 1 at 21 (characterizing Mr. St. Amour as a "business service provider to Plaintiff in Plaintiff's field of work in the legal profession and otherwise . . . Mr. St. Amour is attending to an assignment by Plaintiff to retrieve all papers that may have been recently filed in South Carolina Family Court in Charleston, South Carolina to begin to gather a [sic] understanding

defamation by implication, intentional infliction of emotional distress, and conspiracy to harm under Florida law. (Doc. 1 at 17-38). Defendants now move to dismiss the Complaint under Florida's litigation privilege.

**LEGAL STANDARD**

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

---

of the full scope of publication"). It appears Cherdak is no longer a practicing attorney. (Doc. 1 at n.3; Doc. 1-2 at 7).

In considering a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But acceptance of a complaint's allegations is limited to well-pled allegations. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts must liberally construe pro se filings and hold them to less stringent standards than papers drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *but see Ray v. Hill*, No. 17-14266-CIV, 2017 WL 9988946, at *1 (S.D. Fla. Oct. 27, 2017) ("The fact that [the pro se plaintiff] is an experienced attorney lessens the need for this Court to give him the same degree of latitude usually given to pro se litigants who lack legal training or experience"). Courts cannot act as counsel for plaintiffs or rewrite pleadings. *United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021). And it is "not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1360 (S.D. Fla. 2016) (quoting *Sanders v. United States*, No. 1:08-CV-0190-JTC, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 23, 2009)).

"A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits." *Melford v. Kahane & Assocs.*, No. 18-cv-60881, 2018 WL 5044601, at *2 (S.D. Fla. Oct. 17, 2018)

(citing *Wilchombie v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)). But in some circumstances, affirmative defenses may be considered. Florida's litigation privilege, despite being an affirmative defense, "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Clarke v. Phelan*, No. 16-25217-Civ, 2017 WL 4326522, at *6 (S.D. Fla. Sept. 28, 2017) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004)); *see also James v. Leigh*, 145 So. 3d 1006, 1007-1008 (Fla. Dist. Ct. App. 2014) (finding that the applicability of Florida's litigation privilege was shown on the face of the complaint). "[T]he resolution of questions of litigation privilege at an early stage of the litigation furthers the policies underlying the privilege." *AGM Investors, LLC, v. Business Law Grp., P.A.*, 219 So. 3d 920, 926-27 (Fla. Dist. Ct. App. 2017) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)).

## DISCUSSION

Defendants have moved to dismiss on four grounds: (1) the entire complaint violates Federal Rules of Civil Procedure 8 and 10, (2) litigation privilege applies to Counts I-III (defamation per se, defamation by implication, and intentional infliction of emotional distress), (3) Count III (intentional infliction of emotional distress) is duplicative of Counts I and II, and (4) Count IV (conspiracy to harm) is unsupported by an underlying tort. Defendants also

argue that Cherdak's prayer for relief is variously excessive, unconstitutional, and outside the authority of this Court to award. The Court will start with shotgun pleading.

**A. Shotgun Pleading**

Together, Rules 8 and 10 establish minimum pleading requirements. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And each "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Shotgun pleadings violate Rule 8 because they "fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. *See generally Jackson v. Bank of Am.*, 898 F.3d 1348, 1357 (11th Cir. 2018) (detailing the "unacceptable consequences of shotgun pleading"); *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings . . . exact an intolerable toll on the trial court's docket"). A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading grounds. *Weiland*, 792 F.3d at 1320.

There are two types of shotgun pleadings at issue.  First is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321.  Second is "a complaint that [is] . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322.

To start, Counts I, II, III, and IV all begin with the sentence, "Plaintiff hereby incorporates by reference all of the allegations of all prior sections and the points stated therein as if repeated now in their entirety." (Doc. 1 at 17, 31, 34, 38).  This violates the first category of shotgun pleading.  *Weiland*, 792 F.3d at 1321.

The Complaint is also repetitive, meandering, and conclusory.  Although this case overlaps with an emotional family law matter, the Complaint need not describe all the misdeeds of Cherdak's family members nor how Cherdak feels those family members have wronged him.  For instance, an academic study of "parental alienation," the death of Michael Lynch, "educational misconduct," "hospitalization and emergent mental health evaluations and interventions . . . [involving] Defendants' grandsons," an incident between Defendants involving a knife, and "false police reports" have no bearing on the defamation claims before this Court.  (Doc. 1 at 6-10).  This is not family court.

*See Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992) (reaffirming the "domestic relations exception" to federal diversity jurisdiction, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees").

The Complaint is also filled with arguments, case law, and footnotes, which eviscerates the purpose of a pleading. Rule 8(a)(2) requires a complaint to be a "short and plain statement of the claim[s]." This is in part because Fed. R. Civ. P. 8(b)(1)(B) requires the responding party to "admit or deny the allegations asserted against it by an opposing party." The Complaint's "Introduction and Factual Background" section is drafted so that Defendants cannot reasonably be expected to "admit or deny" the allegations. Paragraph 2, for instance, is about two pages long and avers "intentionally tortious conduct and bad acts alone and in conspiratorial combination," various harms suffered by Cherdak, the definition of defamation, the importance of notaries, and an argument that "[t]his case should stand a strong beacon to the citizens of Florida that while defamation per se will not be tolerated, attempted subversion of our legal systems through knowingly false and notarized affidavits will be met with severe sanctions and punitive damages." (Doc. 1 at 2-4). Defendants argue that they "cannot be expected to file an answer as to such a complaint," and the Court agrees. (Doc. 13 at 3).

The Court thus dismisses the Complaint as a shotgun pleading. Although the Court could stop there, it moves next to the litigation privilege.

**B. Defamation Claims**

"The litigation privilege in Florida provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for acts taken in relation to those proceedings."[6] *North Star Cap. Acquisitions, LLC v. Krig,* 611 F. Supp. 2d 1324, 1329 (M.D. Fla. 2009) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994)).

The litigation privilege provides "absolute immunity . . . [for] any act occurring during the course of a judicial proceeding, regardless of whether the act involved a defamatory statement . . . so long as the act has some relation to the [judicial] proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994). The privilege is premised on the idea that "participants in litigation must be free to engage in unhindered communication." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608. The privilege attempts to balance "the right of an individual to enjoy a reputation unimpaired by

[6] The Court applies Florida litigation privilege because Cherdak brings his claims under Florida law. But South Carolina and Maryland, where these affidavits may have been introduced or will be introduced in court, have similar litigation privileges. *See Crowell v. Herring,* 392 S.E.2d 464, 467-68 (S.C. Ct. App. 1990); *Alfasigma USA, Inc. v. ExeGi Pharma, LLC,* No. 465781-V, 2020 WL 10964185, at *5-8 (Md. Cir. Ct. Aug. 20, 2020).

defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings." *Id.*

Because the privilege's purpose is to prevent chilled speech in litigation, the privilege does not begin or end at the courtroom door. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004) ("Events taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings"); *Stucchio v. Tincher*, 726 So. 2d 372, 374 (Fla. Dist. Ct. App. 1999) (applying litigation privilege to statements made during a witness interview in preparation for trial because "the question is not whether the statement was compelled or under oath; the question is merely whether the statement was made 'in connection with' or 'in the course of' an existing judicial proceeding").[7]

Defendants argue that Counts I and II (defamation and defamation by implication) are barred by litigation privilege because the alleged defamatory

[7] *See also Ross v. Blank*, 958 So. 2d 437, 441 (Fla. Dist. Ct. App. 2007) (applying litigation privilege to statements made by a psychologist to the court-appointed custodial evaluator and the guardian ad litem). *But compare Delmonico v. Traynor*, 116 So. 3d 1205, 1208 (Fla. 2013) (applying only qualified immunity—not absolute immunity—to "alleged defamatory statements the attorney makes during ex-parte, out-of-court questioning of a potential, nonparty witness in the course of investigating a pending lawsuit") *with McCullough v. Kubiak,* 158 So. 3d 739, 740-41 (Fla. Dist. Ct. App. 2015) (distinguishing *Delmonico* and applying absolute litigation privilege to statements made during the deposition of a non-party witness).

statements were made in "affidavits related to Plaintiff's divorce proceedings in South Carolina." (Doc. 13 at 3). The Court agrees.

Florida's litigation privilege "may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Clarke v. Phelan*, No. 16-25217-Civ, 2017 WL 4326522, at *6 (S.D. Fla. Sept. 28, 2017) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1276 (11th Cir. 2004)). Three aspects of the Complaint clearly trigger the litigation privilege: (1) the email sent to Cherdak from Jonathan Lewis, (2) the affidavits themselves, and (3) Cherdak's own words.

Exhibit 3 of the Complaint is an email sent to Cherdak by Jonathan Lewis, counsel for Cherdak's wife in *Cottone v. Cherdak*, No. 2022-DR-10-0519. (Doc. 1-2 at 7). The subject line of the email references an ongoing case: "Charleston Family Court Case No. 2022-DR-10-0519." (Doc. 1-2 at 7). The email attaches the affidavits now at issue and says, "please find affidavits not yet provided to the Court in Maryland or Charleston from Paul and Linda Cottone." (Doc. 1-2 at 7). The affidavits themselves bear a case caption that shows they were prepared for *Cottone v. Cherdak*, No. 2022-DR-10-0519 in the Family Court of the Ninth Judicial Circuit in Charleston, South Carolina.

(Doc. 1-2 at 1-6).[8] Thus, both the email through which Cherdak received the affidavits and the affidavits themselves suggest that the affidavits and their contents "ha[ve] some relation to the [judicial] proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608.

Even if it was unclear from the email and the affidavits themselves that they were prepared for use in litigation, Cherdak acknowledges in the body of the Complaint that the affidavits were drafted for this purpose. Cherdak states, "an attorney acting in concert with the Defendants by the name of Mr. Jonathan E. B. Lewis very likely prepared the actual affidavits signed by the Defendants," hinting that these affidavits and their contents have "some relation to the [judicial] proceeding." (Doc. 1 at 8, n.4; Doc. 1 at 36). But the Complaint goes further. It accuses Defendants six times of attempting to "dupe the courts" with their allegedly defamatory affidavits. (Doc. 1 at 15, 22, 33, 35, 36, 41).[9] More explicitly, the Complaint states that "an attorney . . . wrote Defendants' affidavits *intended for use in a family court* in matters between

[8] The complaint does not specifically state that the affidavits were filed, but it says that "Mr. St. Amour is attending to an assignment by Plaintiff to retrieve all papers that *may have been recently filed* in South Carolina Family Court in Charleston, South Carolina to begin to gather a [sic] understanding of the full scope of publication." (Doc. 1 at 21) (emphasis added). It does not matter whether the affidavits were filed; documents prepared for litigation that was anticipated in good faith are also covered by the privilege. *See AGM Investors, LLC, v. Business Law Grp., P.A.*, 219 So. 3d 920, 925-26 (Fla. Dist. Ct. App. 2017).

[9] Cherdak refers to "duping courts" six times, but also makes similar allegations, e.g., "making out knowingly false affidavits intended to be filed to intentionally mislead courts" throughout his complaint. (Doc. 1 at 3, 4).

Plaintiff and Defendant's [sic] daughter, Lauren Ann Cottone." (Doc. 1 at 36) (emphasis added). This was not an accidental misspeak, as the Complaint later says, "Exhibits 1 and 2 are affidavits that were signed, sworn, and notarized and, as such, *are intended by Defendants to be used by their daughter, Lauren Ann Cottone, in a family Court matter* now pending in South Carolina between Plaintiff and Lauren Ann Cottone." (Doc. 1 at 37, n.9) (emphasis added).

Cherdak tries to walk back his statements in his response to Defendants' Motion to Dismiss, saying that the Complaint "does not support Defendants' unfounded assertions . . . that Defendants' affidavits were allegedly prepared for use as testimony." (Doc. 16 at 20). Yet he twice acknowledges in the Complaint that the affidavits were intended for use in litigation. (Doc. 1 at 36, 37, n.9). To the extent that Cherdak's Response contradicts the Complaint, the Court considers the pleading to rule. *See Clarke v. Phelan*, No. 16-25217-Civ, 2017 WL 4326522, at *6 (S.D. Fla. Sept. 28, 2017) (citing *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1276 (11th Cir. 2004)). It is evident from the face of the Complaint that the affidavits were prepared for use in the case of *Cottone v. Cherdak*, No. 2022-DR-10-0519 in the Family Court of the Ninth Judicial Circuit in Charleston, South Carolina. To find otherwise would be to ignore Cherdak's own statements, the affidavits, and the email showing Cherdak's receipt of the affidavits in context.

The purpose of the litigation privilege is to "protect testifying witnesses against defamation suits premised on statements they made." *Sun Life Assur. Co. of Can. v. Imperial Premium Fin., LLC,* 904 F.3d 1197, 1218 (11th Cir. 2018) (citing *Myers v. Hodges*, 44 So. 357, 361-92 (Fla. 1907)). This case is exactly what the litigation privilege was designed to prevent—a party like Cherdak suing witnesses against him for defamation based on the witnesses' testimony against him during litigation. If Cherdak wishes to challenge the veracity of Defendants' statements about him, he can do so before the courts hearing the cases in which these affidavits are filed. *Delmonico v. Traynor*, 116 So. 3d 1205, 1217 (Fla. 2013). He cannot do so here. The litigation privilege disposes of Counts I and II.

**C. Intentional Infliction of Emotional Distress**

Litigation privilege also disposes of Count III. Litigation privilege immunizes acts done (or statements made) in connection with litigation from tort suits. Accordingly, this privilege extends beyond defamation claims to other tort claims, including intentional infliction of emotional distress. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.,* 639 So. 2d at 608) ("[In *Levin*] we extended the litigation privilege to all torts, finding that 'absolute immunity must be afforded to an act occurring during the course of a judicial proceeding, regardless of whether the act

involves a defamatory statement or other tortious behavior'"). Regardless of whether Cherdak attempts to place Defendants' statements in the bucket of "defamation" or the bucket of "intentional infliction of emotional distress," they are still the same privileged statements, immune from suit. *Fridovich v. Fridovich,* 598 So. 2d 65, 69 (Fla. 1992) ("[T]he successful invocation of a defamation privilege will preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication").

Cherdak's intentional infliction of emotional distress claim also fails on a second ground—he cannot simply reframe "defamation" as "intentional infliction of emotional distress." *Fridovich v. Fridovich,* 598 So. 2d 65, 69 (Fla. 1992) (citing *Boyles v. Mid-Florida Television Corp.,* 431 So. 2d 627, 636 (Fla. Dist. Ct. App. 1983)) ("[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous'"). So even in the absence of litigation privilege, Cherdak's intentional infliction of emotional distress claim would still be improper because it is merely a restatement of his defamation claim. *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998) ("An attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail. The claim for intentional infliction of emotional distress must stem from

outrageous conduct separate from the defamation and not merely 'redescribe the tort of libel while characterizing it as 'outrageous conduct'").

The Court thus grants the motion to dismiss as to Count III.

**D. Civil Conspiracy**

Count IV alleges a civil conspiracy. But "Florida law does not recognize an independent cause of action for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based." *Merchant One, Inc. v. TLO, Inc.*, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020) (citations omitted). Cherdak does not clearly allege an underlying tort in the Complaint. To the extent the Complaint relies on defamation as the underlying tort, it cannot do so.[10]

First, as previously explained, litigation privilege extends beyond defamation claims to other tort claims, which would include civil conspiracy. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). Cherdak cannot rely on defamation as the underlying tort for his civil conspiracy claim because the allegedly defamatory statements are protected by litigation privilege. These statements are privileged no matter

[10] While not expressly stated, it appears Cherdak relies on defamation: "Plaintiff specifically incorporates the descriptions and allegations of the wrongs committed by and corresponding harms caused by the Defendants as asserted in Plaintiff's aforementioned claims for Defamation *per se*, Defamation by Implication, and Intentional Infliction of Emotional Distress under Florida law . . . Both of the Defendants acted to do unlawful acts as explained in detail in connection with Plaintiff's claim for defamation *per se*." (Doc. 1 at 40-41).

how Cherdak frames the tort—defamation, intentional infliction of emotional distress, or civil conspiracy.

Second, Cherdak cannot bring a civil conspiracy action based on defamation while also bringing a defamation claim. Doing so violates Florida's single publication/single action rule. "In Florida, a single publication gives rise to a single cause of action. The various injuries resulting from it are merely items of damage arising from the same wrong." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. 2002) (internal citation omitted).

Because Cherdak's defamation claims fail on litigation privilege (and the single publication/single action additionally bars his claim), Cherdak's "conspiracy to harm" claim must fail. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. 2002) (citing *Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla. 1992)) ("The other counts based on the same publication must fail as well because the same privileges and defenses apply"); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) ("courts dismiss concurrent counts for related torts based on the same publication and underlying facts as the failed defamation count"). This disposes of Count IV.

**E. Leave to Amend**

Courts should "freely" give leave to amend a pleading under Fed. R. Civ. P. 15(a)(2), but a claim should be dismissed with prejudice "if a more carefully drafted complaint could not state a claim." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1213 (11th Cir. 2001) (quoting *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991)). Because Florida's litigation privilege applies to the allegedly defamatory statements made by Defendants, Cherdak could not state a viable claim even if given an opportunity to file an amended complaint.

Accordingly, it is now

**ORDERED:**

1. Defendants' Renewed Motion to Dismiss (Doc. 13) is **GRANTED**.
2. The Complaint is **DISMISSED with prejudice**.
3. Plaintiff's Request for Oral Argument (Doc. 17) is **DENIED** as moot.
4. The Clerk is **DIRECTED** to enter judgment, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 16, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record