UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIK BENJAMIN CHERDAK,

    Plaintiff,

v.                                                           Case No.:   2:22-cv-634-SPC-NPM

VINCENT PAUL COTTONE and
LINDA MARIE COTTONE,

    Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendants' Motion to Declare Plaintiff a Vexatious Litigant and for Related Injunctive Relief (Doc. 45), along with Plaintiff Erik Cherdak's Response. (Doc. 50). For the following reasons, the Court denies Defendants' Motion.

## BACKGROUND

Last year, Cherdak filed a Complaint that alleged defamation per se, defamation by implication, intentional infliction of emotional distress, and conspiracy to harm under Florida law. (Doc. 1 at 17-38). These causes of action

---

[1] Disclaimer: By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

arose from Defendants' affidavits about Cherdak in connection with an ongoing family court action in South Carolina.

Defendants filed a Renewed Motion to Dismiss (Doc. 13), which Cherdak opposed (Doc. 16). The Court granted Defendants' Renewed Motion to Dismiss, dismissing all claims. (Doc. 35).

Now, Defendants move to declare Cherdak a vexatious litigant. Defendants also ask to be excused from Local Rule 3.01(g) conferral with Cherdak and to enjoin Cherdak from filing additional papers in this Court as a *pro se* litigant without prior leave from this Court. Cherdak opposes this motion's merits and challenges the Court's subject-matter jurisdiction over this post-judgment motion. (Doc. 50).

## LEGAL STANDARD

Federal courts have inherent authority "to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (citing *In re Martin-Trigona*, 737 F.2d 1254, 1261-62 (2d Cir. 1984)). This authority was codified by Congress in the All Writs Act, which does not create jurisdiction but does give "all courts established by Act of Congress" the ability to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1949). Through this Act, federal courts may enjoin vexatious litigants from filing in judicial (and

2

nonjudicial) forums. *See Riccard v. Prudential Ins. Co. of Am.,* 307 F.3d 1277 n.15 (11th Cir. 2002).

An injunction under the All Writs Act does not require the same prerequisites as a traditional preliminary injunction. *Klay v. United Healthgroup,* Inc., 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns"). For an injunction under the All Writs Act, "[a] history of litigation entailing 'vexation, harassment and needless [. . .] burden on the courts and their supporting personnel' is enough." *Ray v. Lowder,* No. 5:02-CV-316, 2003 WL 22384806, at *5 (M.D. Fla. Aug. 29, 2003) (quoting *Martin-Trigona,* 737 F.2d at 1262). Five factors provide guidance in determining whether a litigant's conduct is vexatious enough to warrant an injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; [and] (5) whether other sanctions would be adequate to protect the courts and other parties.

*Ray,* 2003 WL 22384806, at *8 (citing *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986)).

## DISCUSSION

Defendants move to declare Cherdak a vexatious litigant, arguing that his conduct—both inside and outside of this Court—has been harassing and frivolous. In opposition, Cherdak argues that the motion is improper for the Court to consider post-judgment and that it lacks merit.

The Court begins with the threshold issue—jurisdiction.

### A. Subject-Matter Jurisdiction

Cherdak argues that, upon dismissing the case with prejudice, the Court's subject-matter jurisdiction terminated pursuant to "28 U.S.C." (Doc. 50 at 9). In short, Cherdak argues that only Fed. R. Civ. P. 59 and 60 motions can be brought in an action post-judgment. (Doc. 50 at 9). And since Defendants do not move under Rule 59 or 60 to have Cherdak declared a vexatious litigant, he believes the Court cannot entertain the Motion. He is incorrect.

A motion to have a litigant declared vexatious is akin to a motion for sanctions, which may be heard post-judgment. *See Thompson* 2010 WL 5497673, at *11; *Byrne v. Nezhat*, 261 F.3d 1075, 1105-1106 (11th Cir. 2001) (discussing the "three sources of authority" to impose sanctions—Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and "the court's inherent power"). Motions for sanctions are reviewable post-judgment in part because they address collateral issues that have no bearing on the Court's final verdict on the merits. *See*

4

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990), *superseded in part by* Fed. R. Civ. P. 11 (1993).

Similarly, Defendants' vexatious litigant motion addresses a collateral issue—the burden Cherdak has and will impose on Defendants and the Court. But while collateral, this issue is important to docket management and the smooth flow of the Court's cases.

The Court has inherent authority to protect its docket from potential abuses which could stymie the Court's ability to carry out its Article III functions. *See Procup*, 792 F.2d at 1073-74. If the Court had no jurisdiction over post-judgment vexatious litigant motions, the Court would be helpless in the face of vexatious post-judgment filings. This does not comport with logic or the law. *See Thompson*, 2010 WL 5497673, at *24 (explaining that a motion for injunctive relief against a vexatious litigant after the plaintiff voluntarily withdrew the case is a collateral issue that the court can address); *see also Qureshi v. United States*, 600 F.3d 523 (5th Cir. 2010). Whether this Motion to Declare Plaintiff a Vexatious Litigant was filed before or after the dismissal of this case, the Court maintains authority to decide it.

**B. Vexatious Litigant**

Since the Court has jurisdiction to decide Defendants' motion, the Court now addresses whether Cherdak's conduct is so vexatious it warrants an injunction.

1. *Cherdak's History of Litigation*

Defendants assert that Cherdak has shown vexatious conduct through his history of litigation, both in this Court and in other courts. (Doc. 45 at 7).

Cherdak's concerning conduct began in 2015 with the case of *Fitistics, LLC v. Cherdak*, No. 1:16-cv-112-LO-JFA, 2018 WL 4059375 (E.D. Va. Aug. 23, 2018), presided over by Judge Liam O'Grady. (Doc. 45-1 at 5-6). Fitistics, LLC—a former client of Cherdak when he was a practicing attorney—sued him for breach of contract, breach of fiduciary duty, conversion, and fraud. *Fitistics, LLC,* 2018 WL 4059375, at *2. During the bench trial, Judge O'Grady made several observations about Cherdak's conduct in the case:

> [T]he Court finds it necessary to comment on [Cherdak's] testimony. The Court found Cherdak's testimony to be wholly incredible, regularly contradicted by common sense and plain evidence before the Court . . . The Court is also convinced that Cherdak lied to United States Magistrate Judge Judith Dein in the District of Massachusetts on October 1, 2015 at an in-person hearing . . . There is also no doubt that Cherdak perjured himself in this case . . . His character for untruthfulness, prior false statements to a federal judge, perjury in filings with the United States Bankruptcy Court, and perjury during his deposition and during the trial in this matter render his testimony worthless to the Court.

*Fitistics, LLC*, 2018 WL 4059375, at *5-6.[2]

---

[2] Judge O'Grady also credited the testimony of Steven Ward, an attorney who had "received bad checks from Cherdak." *Fitistics, LLC*, 2018 WL 4059375, at *5. Mr. Ward testified that "I don't think [Cherdak] has any truthfulness. I mean, frankly, if he told me it was raining outside, I'd have to go check to see if it was before I got my raincoat." *Id.*

By separate order, Judge O'Grady found Cherdak's conduct sanctionable, noting that his "brazen conduct in filing many frivolous pleadings and putting false information before the Court demonstrates both the severity of the Rule 11 violation and the importance of a significant sanction *to serve as deterrence from Mr. Cherdak continuing to abuse the legal system.*" *Fitistics, LLC v. Cherdak,* No. 1:16-cv-112-LO-JFA, 2019 WL 7899995, at *2 (E.D. Va. June 10, 2019) (emphasis added).

Cherdak responded to his loss in the *Fitistics* case by suing Judge O'Grady and Judge O'Grady's judicial assistant via a 72-page complaint. (Doc. 45-1 at 21); *Cherdak v. O'Grady*, No. 21-CV-0141, 2022 WL 599487 (E.D. Va. Feb. 28, 2022). Cherdak's claims were dismissed with prejudice. *Id.* at *10.

Cherdak's legal troubles did not stop there. In October 2022, Cherdak was disbarred from the practice of law in Pennsylvania. (Doc. 45-1 at 1). In a lengthy report and recommendation, the Disciplinary Board of the Supreme Court of Pennsylvania concluded that Cherdak's behavior during his disciplinary proceedings "evidenced a lack of respect for the disciplinary system." (Doc. 45-1 at 31). The Board also noted that Cherdak's suit against Judge O'Grady showed his reluctance to accept the outcome of the *Fitistics* case and that Cherdak had wasted an opportunity for self-advocacy on "attempt[ing] to relitigate previous rulings and attack[ing] perceived wrongs brought upon him, specifically by Judge O'Grady." (Doc. 45-1 at 30, 32).

7

Then Cherdak became involved in family court litigation in South Carolina. In the family court matter, he filed an "Emergency Motion for an Order Enjoining Attorney Jonathan E.B. Lewis from Engaging in Untruthful, Threatening, and Harassing Conduct." (Doc. 45-5). Cherdak used this "emergency" motion as a 50-page opportunity to complain about opposing counsel. (Doc. 45-5). In this family court matter, he also filed a lengthy (12-page) brief to strike an affidavit over the misspelling of an address ("150 Wappo Creek Drive" as opposed to "150 Wappoo Creek Drive") and the absence of an apartment number. (Doc. 45-3).

Cherdak's conduct in prior litigation reflects the tenor of his conduct before this Court, where he has engaged in attacks on opposing counsel and filed unnecessary and lengthy papers. Cherdak began this case with a 46-page meandering Complaint which contained—among other things—a 1.5-page footnote on "parental alienation." (Doc. 1 at n.4). He then filed an emergency motion on a matter that was not, in fact, an emergency. (Doc. 3). As the case progressed, he filed several objectively unnecessary documents, such as an Objection to Defendant's Notice of Allegedly Related Cases and Motion to Strike that Notice in Accordance with the Court's Inherent Authority (Doc. 22) and an Objection to Defendants' Supplemental Rule 3.01(g) Certification at ECF 48 on the Basis of False Representations Made by Lead Defense Counsel Hazzard in that Supplemental Certification (Doc. 49).

8

Cherdak's history of litigation is certainly "vexatious" in the typical dictionary definition of the word. He has been demonstrably disrespectful in court and disciplinary proceedings, and he has filed unnecessary papers. Yet his history of litigation is not yet to a level that warrants an injunction. So this factor does not support entering injunctive relief against Cherdak.

2. *Cherdak's Motive in Pursuing Litigation*

Cherdak's motive in pursuing this case can be gleaned from two things: (1) the lack of an objective, good faith basis of prevailing on the claims raised, and (2) his conduct in past litigation.

In the Complaint, Cherdak raised two claims of defamation, an intentional infliction of emotional distress claim, and a civil conspiracy claim. ([Doc. 1](#)). At minimum, his claims of intentional infliction of emotional distress and civil conspiracy are objectively frivolous to someone with a basic understanding of the law. Cherdak—as a former attorney—has more than a basic understanding of the law. Yet Cherdak reframed a defamation claim as intentional infliction of emotional distress and brought a civil conspiracy claim with no underlying tort. Cherdak practiced as a licensed attorney for about thirty years. Someone with an expansive legal background, like him, would

have no objective, good faith expectation of prevailing on either of these claims.[3]

But it seems that Cherdak was more concerned with bullying Defendants than with success on the merits. His bullying behavior may have been intended to intimidate Defendants into not providing testimony (via affidavit or otherwise) in the family court proceedings in South Carolina. *See, e.g.*, Doc. 45-1 at 32 (the Disciplinary Board of the Supreme Court of Pennsylvania noting that Cherdak's "usual way of doing business . . . appears to be to attempt to manipulate, confuse, embarrass, and bully those with whom he is dealing"). Or it may simply have been intended as an outlet for Cherdak to vent his frustrations with his in-laws. *See, e.g.*, Doc. 35 at 7 (the Court discussing Cherdak's Complaint and reminding him that "the Complaint need not describe all the misdeeds of Cherdak's family members nor how Cherdak feels those family members have wronged him"). Or it may have been an effort to get money to assuage his millions in outstanding debt. (Doc. 45-1 at 21). All of these reasons find support in the record. Regardless, his motive in pursuing litigation was not in good faith.

---

[3] Cherdak advised defense counsel to "think three times before you file" and ask herself three questions: "[D]id I get the law right? [D]id I get the facts right? [A]nd am I proceeding with good faith that what I intend to file in a court of law is a good application of true controlling law to the real facts?" (Doc. 50-2 at 3). Cherdak did not consider these questions in his filings in this case and is cautioned to consider them before filing any additional papers with this Court.

Cherdak's leading concern—bullying—is shown by the time and effort he has spent attacking defense counsel and Defendants. Cherdak has repeatedly accused defense counsel of intentionally misleading the Court. (Doc. 45 at 2; Doc. 16 at n.1, 11, 12, 13, n.4, 16; Doc. 50 at 1-2). He has variously alleged that defense counsel's "advocacy knows no bounds of truth," that defense counsel "has lied to a court, [and] has engaged in heinous conduct," and that defense counsel has committed malpractice. (Doc. 50 at 8; Doc. 55 at 11).

And when Defendants moved to declare Cherdak a vexatious litigant (Doc. 45), Cherdak's first action—even before filing a response to the motion—was to send an email directing defense counsel to "TAKE IMMEDIATE ACTION TO WITHDRAW MOTION." (Doc. 50-1). In the email, he told defense counsel "you have misguided your clients, your firm, and yourself into sanctions territory." (Doc. 50-1 at 3). Cherdak copied who he viewed as senior personnel at defense counsel's law firm: "I've sent this email to your firm's principals . . . so they are made aware of your actions to date and so they are fully apprised of the actions of you and your firm . . . they should know that their firm is now subject to claim(s) under Florida law." (Doc. 50-1 at 4). Cherdak threatened to "seek sanctions" and "make a claim for abuse of process under Florida law" if defense counsel did not withdraw the motion within three hours of the time of his email. (Doc. 50-1 at 3).

11

Cherdak's bullying has also been aimed directly at his Defendant in-laws. They are the named parties, they are the ones expending money on counsel—and they are also the ones who authored affidavits against Cherdak in ongoing family court proceedings in South Carolina. Cherdak has deliberately considered the impact this lawsuit will have on them, noting in an email to defense counsel that "it will be interesting to see how your clients handle having to call witnesses (including all of their grandchildren) to the stand and be subjected to vigorous cross examination." (Doc. 50-2 at 2).

Overall, his conduct reflects motives that are consistent with the observations of the Disciplinary Board of the Supreme Court of Pennsylvania—that Cherdak's "usual way of doing business . . . appears to be to attempt to manipulate, confuse, embarrass, and bully those with whom he is dealing." (Doc. 45-1 at 32). Whether this case was brought to bully his Defendant in-laws, to preclude unfavorable affidavits from being used against him in family court, or to try to recoup some of the $2.3 million debt he has outstanding (Doc. 45-1 at 21), one thing seems clear—Cherdak's motives in bringing his claims were improper. And improper motives weigh in favor of injunctive relief.

3. *Whether Cherdak is Represented by Counsel*

Cherdak is representing himself *pro se*. Generally, the courts give great discretion to *pro se* litigators due to their presumed inexperience and lack of knowledge of the legal system. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

12

But Cherdak is a former attorney, is familiar with the law, and has shown his knowledge and ability to research, understand, and apply the law. Judge O'Grady concluded that "Cherdak is not entitled to the consideration normally afforded to pro se parties who lack familiarity with the law, the court system, and its policies and procedures." *Fitistics, LLC v. Cherdak,* 2018 WL 4059375, at *1. This Court agrees. So this factor supports entering injunctive relief.

   *4. Whether Cherdak has Unnecessarily Burdened Defendants and the Court*

The fourth factor—whether a plaintiff's conduct has unnecessarily burdened the Court and the parties involved—is one of the most important in determining whether a court should enter injunctive relief. *Ray,* 2003 WL 22384806, at *3.

Cherdak opened this case with a shotgun pleading, a paper which wastes Defendants' time by failing to adequately inform Defendants of the claims against them and also wastes the Court's time and resources. *See Weiland v. Palm Beach Cty. Sheriff's Off.,* 792 F.3d 1313, 1323 (11th Cir. 2015). And this shotgun pleading included claims that Cherdak knew lacked legal merit, which forced Defendants to defend against obviously meritless claims and the Court to expend resources to issue an Order on these claims.

Cherdak then filed an emergency motion for a non-emergent issue, which also inappropriately burdened the Court's resources—particularly when the Court was still recovering from Hurricane Ian. (Doc. 3). And of course, his

conduct throughout litigation has been problematic—notably through his unnecessary, voluminous, and rambling filings.

But his conduct in this case, when considered in its totality, has not yet imposed a burden on Defendants or this Court sufficient to warrant an injunction. This is Cherdak's first lawsuit filed in the Middle District of Florida, and the current volume and content of Cherdak's filings—although cumbersome and trying—fail to rise to the same level as other enjoined plaintiffs in this District. *See Ray,* 2003 WL 22384806; *Bernath,* 2017 WL 3887785. This factor does not support the imposition of an injunction.

5. *Whether Other Sanctions Would be Appropriate*

Monetary sanctions can sometimes be sufficient to curb vexatious conduct, but such sanctions are unlikely to deter Cherdak.

First, Cherdak is familiar with sanctions, having been sanctioned before in *Fitistics, LLC v. Cherdak,* 2019 WL 7899995, in the amount of $361,576.18. These sanctions have not curbed Cherdak's behavior.

Second, Cherdak has a history of nonpayment and fraudulent payments. (Doc. 45-1 at 19-20). As of August 29, 2022, Cherdak still owes more than $2.3 million in outstanding judgments. (Doc. 45-1 at 21). Cherdak's financial delinquency and outstanding debt suggests that it is doubtful any financial sanction will sufficiently deter him from future vexatious filings. Thus, this factor weighs in favor of entering injunctive relief.

This means that by raw score (three factors in favor of injunctive relief and two factors against), this Court should declare Cherdak a vexatious litigant. But the analysis is not so mechanical. Cherdak's conduct is undeniably problematic. But his conduct—while vexatious in the dictionary sense—does not yet meet the "vexatious litigant" legal standard, and the Court declines to impose an injunction.

### A. Local Rule 3.01(g)

Defendants also request relief from compliance with Local Rule 3.01(g), which requires a moving party to "confer with the opposing party in a good faith effort to resolve the motion" before filing. Cherdak opposes Defendants' request on the grounds that defense counsel "materially misrepresent[ed] the facts surrounding Plaintiff's good-faith in working to meaningfully participate in a genuine and meaningful meet and confer conference." (Doc. 50 at 19).

While the Court fully appreciates Defendants' frustration, a blanket exemption from compliance is not appropriate. The Court urges Cherdak to keep his email correspondence and conferrals with defense counsel brief, polite, and concise. "Concise" is defined as *"free from all elaboration and superfluous detail."* *Concise*, Merriam-Webster, https://www.merriam-webster.com/dictionary/concise (last visited July 12, 2023) (emphasis added).

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Declare Plaintiff a Vexatious Litigant and for Related Injunctive Relief ([Doc. 45](#)) is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida on July 13, 2023.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record